UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| REFRIGERATION SUPPLIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:19 CV 2210 RWS |
| | ) | |
| ACADIA INS. CO., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Refrigeration Supplies, Inc. (RSI) alleges that a hailstorm on June 28, 2015 damaged its properties located at 9700 and 9710 Manchester Road in St. Louis, Missouri.[1]  At the time of loss, the properties were insured under a policy issued by defendant Acadia Insurance Company.  RSI first made a claim for hail damage under the policy in 2018.  After numerous inspections, Acadia eventually denied the claim on the grounds that it was not a covered loss within the policy period and that RSI did not timely report it.  RSI then filed suit for declaratory judgment, breach of insurance contract, vexatious refusal to pay, and to compel an appraisal in Missouri state court.  The case was timely removed to this Court on the basis of diversity jurisdiction.

---

[1] An aerial view of the properties shows that 9700 and 9710 are separated by a small strip of grass on the same large lot.  The parking lots are connected.  [Doc.# 33-6 at 14].

Acadia now seeks summary judgment on RSI's declaratory judgment, breach of contract, and vexatious refusal to pay claims on the ground that RSI has no admissible expert testimony that the damage caused to its properties was caused by hail.  To make this argument, Acadia has filed with its summary judgment motion a corresponding motion to exclude the testimony and opinions of RSI's expert, Anthony Childress.  Acadia argues that Childress' testimony is inadmissible because his methodology is unreliable and he merely "parrots" the conclusions of another.   Acadia additionally argues that it is entitled to judgment as a matter of law on RSI's vexatious refusal claim because it relied on an expert opinion to deny coverage.  Acadia moves for judgment on the claim to compel an appraisal on the ground that I already denied RSI's motion to compel an appraisal by Memorandum and Order dated February 25, 2020.  [Doc. 25].  RSI concedes that summary judgment is proper on this count given the Court's prior ruling, so the Court will enter judgment in Acadia's favor on that claim.

After careful consideration, I will deny the motion to exclude Childress' testimony and deny the remaining motion for summary judgment for the following reasons.

<u>Standards Governing Summary Judgment</u>

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the

record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

<u>Relevant, Undisputed Facts</u>[2]

On June 28, 2015, a hail storm hit the St. Louis area. RSI contends that this storm damaged the roofs of its buildings located at 9700 and 9710 Manchester

---

[2] In addition to the statement of material facts filed by Acadia in support of summary judgment, the Court has also reviewed the materials previously filed in connection with plaintiff's motion to compel appraisal and stay litigation. [Doc. 20]. As Acadia asks the Court to enter summary judgment in its favor based on the Court's earlier ruling on this motion, these facts and supporting evidence remain properly before the Court. Neither party may rely on this Memorandum and Order to establish the existence of any fact or defense at trial.

Road in St. Louis, Missouri.  At the time, RSI's property was covered by an insurance policy issued by Acadia with an effective date of July 1, 2014 (policy number CPA 3058492).  RSI did not report the damage to Acadia until February of 2018, when RSI's plant manager noticed a leaky roof.  RSI then made a claim under its insurance policy with Acadia for coverage of its commercial property located at 9700 Manchester Road in St. Louis, Missouri.

Acadia initially hired Team One Adjusters to meet with RSI's contractor and inspect the flat roof for damage.  The first inspection took place on March 12, 2018.  On March 14,2018, Team One sent a report to Acadia finding numerous instances of hail impact and an estimate to repair the damage in the amount of $217,592.95.  That estimate was never sent to RSI.  Instead, Acadia retained the engineering firm SEA, Ltd. to inspect the roof at 9700 Manchester for hail damage. Michael McIntyre, P.E., of SEA inspected the roof on April 4, 2018.  On April 17, 2018, SEA issued a report that contradicted Team One's finding of numerous hail impacts.  Instead, SEA concluded that the single ply membrane roof covering on the building did not sustain hail impact damage and that the circular/spiral damage to localized areas of the top surface of the roof membrane was consistent with weathering damage, possibly coupled with a manufacturing defect.  SEA further concluded that there was no storm damage observed on the roof covering that could cause a leak, so the reported leaks were not the result of storm damage.

SEA conducted a second inspection of the roof at 9700 Manchester on June 4, 2018.  RSI's contractor and corporate representative were present, along with a representative from Duro-Last, the manufacturer of the roof membrane.  A visual inspection was conducted and test cuts were made in the roof membrane.  A test cut revealed moisture intrusion.  Based on the second inspection, SEA's amended report concluded that it "could not rule out the possibility that the dent in the insulation was caused by hail.  However, the absence of dents at other locations where membrane surface damage was observed indicates that the surface membrane damage at the dented insulation was not caused by hail.  As stated in SEA's original report, the absence of denting to the insulation and/or the PVC membrane surface at the damage locations precludes hail impacts a cause of the PVC membrane damage."

On June 22, 2018, Acadia sent RSI a copy of SEA's amended engineering report along with a letter stating that "we do not feel there is any hail damage to your building."  By this time, RSI had retained a public adjuster, and the adjuster informed Acadia that it disagreed with the conclusions and requested an inspection of the out-building's roof.  Acadia reiterated its position that no coverage was owed based on SEA's report.

On November 1, 2018, Acadia asked SEA to inspect RSI's building at 9710 Manchester for hail damage.  Brian Wehmeier, P.E.,[3] of SEA conducted the inspection and produced a report on December 11, 2018.  SEA stated the single-ply membrane roof covering did not sustain hail damage and, like the roof at 9700 Manchester, the circular/spiral damage to localized areas of the top surface of the membrane was consistent with weathering damage, possibly coupled with a manufacturing defect.  As for the cooling fins and flue cap, SEA found hail damage, which it characterized as minor, and it could not "completely rule[] out" the possibility that hail fall after July 1, 2014 contributed to the denting of these metal components.

Acadia also sent a third-party adjuster, Commercial Insurance Services, to investigate the buildings for potential hail damage to the HVAC units.  CIS "verified the hail damage being claimed" and estimated $23,785.44 in damages.  Based on the information provided, Acadia's field adjuster noted that the "potential exists that damages to the soft metals and RTU units were caused during our policy" and therefore he recommended covering the damage identified by CIS.  The field adjuster's supervisor disagreed.  On January 4, 2019, Acadia advised RSI that while there was potential damage to their HVAC units as indicated in CIS's report, there was no indication whether the damage occurred during Acadia's

---

[3] Mr. Wehmeier has been named by Acadia as an expert witness in this case.

policy period, and that due to the late reporting of the claim, Acadia's right to investigate the loss had been prejudiced.  Therefore, Acadia denied RSI's claim in its entirety.  After it unsuccessfully sought to invoke the appraisal provision in the policy, RSI filed the instant suit.

<u>Standards Governing Expert Testimony</u>

The Federal Rules of Evidence govern the admissibility of evidence in a diversity case.  *Wood v. Valley Forge Life Ins.*, 478 F.3d 941, 945 (8th Cir. 2007). Federal Rule of Evidence 702 requires that an expert be qualified and that his testimony be both reliable and relevant. *See* Fed. R. Evid. 702; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  A district court acts as a "gatekeeper" when screening expert testimony for relevance and reliability. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-93 (1993); *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012).  To satisfy the reliability requirement, the party offering the expert testimony "must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid."  *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006)).  To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue.  *Id.*  A court is entitled to

substantial discretion in determining whether expert testimony should be allowed.
"There is no single requirement for admissibility as long as the proffer indicates
that the expert evidence is reliable and relevant." *Russell*, 702 F.3d at 456-57
(quotation omitted).  "The standard for judging the evidentiary reliability of expert
evidence is lower than the merits standard of correctness." *Kuhn v. Wyeth, Inc.*,
686 F.3d 618, 624-625 (8th Cir. 2012) (internal quotation marks and citation
omitted).  "Proponents of expert testimony need not demonstrate that the
assessments of their experts are correct, and trial courts are not empowered to
determine which of several competing scientific theories has the best provenance."
*Id.* at 625 (internal quotation marks and citations omitted).  "Vigorous
cross-examination, presentation of contrary evidence, and careful instruction on the
burden of proof are the traditional and appropriate means of attacking shaky but
admissible evidence." *Daubert*, 509 U.S. at 596.  "Rule 702 reflects an attempt to
liberalize the rules governing the admission of expert testimony.  The rule clearly
is one of admissibility rather than exclusion." *Lauzon v. Senco Prods., Inc.*, 270
F.3d 681, 686 (8th Cir. 2001) (internal quotation marks and citations omitted).
"An expert's opinion should be excluded only if that opinion is so fundamentally
unsupported that it can offer no assistance to the jury." *Synergetics, Inc. v. Hurst*,
477 F.3d 949, 956 (8th Cir. 2007) (internal quotation marks and citation omitted);

*see also Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 544 (8th Cir. 2006) (quotation omitted).

Anthony Childress' Opinion

Anthony Childress was hired by RSI's public adjuster "to establish if the commercial building located at 9700 Manchester Rd. in St. Louis, Missouri has sustained enough storm damage to require any type of construction remediation or replacement." [Doc. #33-2].   Mr. Childress is a Professional Engineer licensed in Missouri, among other states.  He is the president of his own engineering firm, Childress Engineering Service.

Mr. Childress was not hired to inspect the property at 9710 Manchester Road and offered no opinion with respect to that property.  He produced a report called "Limited Roof Damage Assessment" on December 10, 2019.  The report is signed on behalf of CES by Mr. Childress and his employee, Anthony Capocci.  Mr. Capocci is a roofing consultant (not an engineer) and is not an expert witness in this case.  Mr. Capocci conducted a visual inspection of the roof for CES on December 10, 2019 and took numerous photographs, 75 of which are attached to the report.  Mr. Childress did not personally inspect the roof at 9700 Manchester. The report states that "the observations were limited to visual examination.  CES did not perform any destructive/disassembly work or testing for the above referenced assessment."  [Doc. # 33-2]. The report concludes:

> A review of the supplied reports and a visual inspection of the property was conducted by Childress Engineering Services, Inc. (CES). CES found enough evidence to suggest that the existing roof system was damaged by hail during the storm that occurred on June 28, 2015. The damaged conditions caused by hailstone impact during the storm event that is detailed in this report should be replaced.

[Doc. # 33-2].

Acadia does not contend that Mr. Childress is unqualified to render an expert opinion in this case.  Instead, it argues that Childress' opinion should be excluded because he merely "parrots" the opinion of Mr. Capocci, the non-engineer who physically examined the roof.   Acadia makes much of the fact that Mr. Childress has never been on the roof at 9700 Manchester Road.  The Federal Rules of Evidence do not permit an expert to simply "parrot" the opinions of other experts. *Hill v. Fikes Truck Line, LLC,* 2012 WL 5258753, at *4 (E.D. Mo. Oct. 24, 2012) (collecting cases).  "An expert's opinion must be based upon his or her own application of principles within his [or] her expertise to the facts of the case." *Id.* at *3 (*citing Quiles v. Bradford–White Corp.*, 2012 WL 1355262, at *7 (N.D.N.Y. Apr. 18, 2012)).  "To allow otherwise would deprive the opposing party of the opportunity to cross examine the expert on the basis for the nontestifying expert's opinion." *Id.*  (internal quotation marks and citation omitted).

In this case, however, Mr. Childress testified that he formed his own conclusions and opinions about whether the roof sustained hail damage after reviewing the evidence, which included a meteorological report and more than 75

photographs of the roof, and discussing it with Mr. Capocci.  [Doc. #44-1 at 9]

(Childress: "So Tony Capocci goes out and looks at it, and his job is to convince

me he's right or wrong.  Then my job is to go through the facts independently and

see whether I can stand behind it or not.").  Mr. Childress relied upon the data

collected by Mr. Capocci to reach an independent determination as to the source of

the damage to the roof, and in so doing did not impermissibly "adopt wholesale"

the opinion of Mr. Capocci.  That Mr. Childress reached his opinion without

physically examining the roof himself is certainly fodder for rigorous cross-

examination, but this fact does not render his opinion inadmissible as the mere

"parroting" of another.

    Acadia next argues that Mr. Childress' opinion should be excluded because

his methodology is unreliable.  Acadia argues that CES did not follow its own

methodology when conducting what Mr. Childress described in his deposition as a

"Phase I" investigation of the roof.  Mr. Childress testified that this phase usually

involved a visual inspection of the roof, documenting the number of hail strikes, at

times using chalk to identify undulations in the roof membrane, at times drawing

squares to map or measure the intensity and direction of the hail strikes, taking

photographs, and reviewing a meteorological report.  [Doc. # 44-1 at 21].  Because

no test squares were drawn and the number of hail strikes were not documented or

measured for the preparation of the report, Acadia argues that Mr. Childress'

testimony about the source of the damage should be excluded.  This argument

ignores Mr. Childress' later testimony that these actions were not taken in this

particular case because "the hail was predominant and the size was predominant"

and "it was everywhere" so these steps were not necessary to render the opinion

that hail damaged the roof.  [Doc. # 44-1 at 25].  According to Mr. Childress, this

roof was "clearly" damaged by hail.  [Doc. # 44-1 at 46].  In reaching his opinion

that the roof was damaged by hail, Mr. Childress relied on the numerous fractures

found throughout the roof membrane, which included a review of the seams in the

roof membrane to determine whether the fasteners had come loose to create the

indentations in the membrane that look similar to hail strikes.  [Doc. # 44-1 at 26].

According to Mr. Childress, the fasteners had not come loose and did not create the

indentations in the roof.  [Doc. # 44-1 at 26].  He also looked for evidence of foot

traffic but found no large undulations to indicate that foot traffic caused the roof

damage.  [Doc. # 44-1 at 27].  There is no evidence or argument to suggest that

"Phase I" is a standard industry requirement.  It is just a term coined by Mr.

Childress to describe how he usually approaches the first stage of damage

assessment.  Nor did Mr. Childress testify that CES always performed every step

he outlined in his description of "Phase I" such that it can be said he did not follow

his own methodology in forming his opinions in this case.  A fair reading of the

entirety of Mr. Childress' testimony is that all the things CES might do in a "Phase

I" investigation to determine whether hail damaged a roof were not necessary in this case because the evidence of hail damage was overwhelmingly obvious.  That Mr. Childress formed his opinions without some of this "Phase I" information is certainly fodder for vigorous cross-examination, but it is not a basis upon which the Court should exclude his testimony as it goes to weight rather than admissibility.

The same is true of Acadia's last argument, namely that Mr. Childress' testimony should be excluded because he did not perform any of the tests that its expert, Mr. Wehmeier, conducted to form his opinion that weathering and/or a possible manufacturing defect, not hail, damaged the roofs at 9700 and 9710 Manchester Road.  Mr. Wehmeier made test cuts in the roof membranes to observe the insulation and facer material underneath the roof membrane.  According to Mr. Wehmeier, the absence of dents in the material beneath the membrane at locations where membrane surface damage was observed indicates that the surface membrane damage at the dented insulation was not caused by hail.  According to Mr. Childress, however, the test cuts are unnecessary to determine whether a roof is damaged by hail.  Instead, the cuts are used to document the extent and source of leaks (if any) and determine whether repair or replacement is needed.  [Doc. # 44-1 at 34-35].  Mr. Wehmeier also performed a demonstration of simulated hail impacts in connection with the expert opinion he offers in this case.  [Doc. # 36 at

6].   Mr. Wehmeier opines that the results of his experiment confirm his opinion that hail did not damage the roof membranes.  [Doc. # 36 at 6].  Mr. Childress believes that simulated hail impact testing only has value when performed on new roofs and has limited, if any, value in connection with older roofs such as those at 9700 Manchester Road.  [Doc. # 44-1 at 23].  This amounts to nothing more than the classic battle of the experts, and Mr. Childress' opinion is not rendered inadmissible merely because he disagrees with the opinions and testing methods used by Mr. Wehmeier.  It is up to the jury, not this Court, to weigh the credibility of these dueling experts and to determine which expert, if any, to believe.  The motion to exclude Mr. Childress as an expert witness will be denied.

Summary Judgment Motion

The Court having concluded that Mr. Childress' testimony should not be excluded, Acadia's motion for summary judgment on RSI's claims for declaratory judgment, breach of insurance contract, and vexatious refusal to pay will be denied as to the property located at 9700 Manchester Road to the extent it relies on the absence of admissible expert testimony.  However, Mr. Childress did not offer any opinion with respect to the property located at 9710 Manchester Road, so Acadia argues that it is entitled to summary judgment with respect to that property. Viewing the facts in the light most favorable to RSI and drawing all inferences in its favor, a reasonable jury could conclude that hail damaged the property at 9710

Manchester Road based on the close proximity of the two buildings, a review and

comparison of the photographic evidence of the roofs of the two buildings, the

expert opinion and meteorological data that a hail storm fell on the property on

June 28, 2015, Mr. Childress' testimony regarding evidence of hail damage at 9700

Manchester, and, Mr. Wehmeier's own expert opinion that hail "partially

flattened" the cooling fins of two rooftop HVAC units and dented a single flue cap

on the roof at 9710 Manchester Road, and that he "could not completely rule out"

the possibility that "a hail event after July 1, 2014" caused this damage.  That

Acadia's expert witness also opined that the roof membrane at 9710 Manchester

Road was damaged by weathering and/or a manufacturing defect rather than hail

and that the hail damage was "cosmetic" does not render the other evidence

insufficient as a matter of law to support a jury's verdict in RSI's favor,

particularly in the absence of any requirement in Missouri law that expert

testimony is required to establish hail damage in an insurance case.  The jury is

free to accord the evidence the weight it believes it deserves, and the Court cannot

enter summary judgment in Acadia's favor on the property located at 9710

Manchester Road simply because it believes its evidence is more persuasive than

that produced by RSI.  It is the province of the jury, not the Court, to weigh the

evidence and resolve competing versions of events.  Summary judgment on RSI's

claims for declaratory judgment, breach of insurance contract, and vexatious

refusal to pay will also be denied as to the property located at 9710 Manchester Road.

Acadia also moves for summary judgment on RSI's vexatious refusal to pay claim for the additional reason that there were open questions of fact regarding whether hail damaged the roofs and it relied upon expert reports to deny the claim. "Missouri law provides that an insured may recover penalties and attorney fees when an insurer denies a claim without reasonable cause or excuse." *United Fire & Cas. Co. v. Historic Pres. Trust*, 265 F.3d 722, 729 (8th Cir. 2001); *see* Mo. Rev. Stat. §§ 375.296, 375.420.  "These statutes are penal in nature and narrowly construed; their purpose is to deter the insurer from vexatiously refusing to pay 'after becoming aware it has no meritorious defense' to the insured's claim." *State of Missouri ex rel. Pemiscot County, Mo. v. W. Sur. Co.*, 51 F.3d 170, 174 (8th Cir. 1995).  "To support a claim of vexatious refusal to pay proceeds of an insurance policy, the insured must show the insurer's refusal to pay is willful and without reasonable cause, as the facts would appear to a reasonable and prudent person." *Mears v. Columbia Mut. Ins. Co.*, 855 S.W.2d 389, 394 (Mo. Ct. App. 1993). "When there is an open question of law or fact, the insurer may insist upon a judicial determination of those questions without being penalized." *Joachim Sav. & Loan Ass'n v. State Farm Fire & Cas. Co.*, 764 S.W.2d 648, 651 (Mo. Ct. App. 1988).  "The existence of a litigable factual or legal issue, however, 'does not

16

preclude a vexatious penalty where there is evidence the insurer's attitude was vexatious and recalcitrant.'" *JAM Inc. v. Nautilus Ins. Co.*, 128 S.W.3d 879, 898 (Mo. Ct. App. 2004) (quoting *DeWitt v. Am. Family Mut. Ins. Co.*, 667 S.W.2d 700, 710 (Mo. 1984) (en banc)). "To prove vexatious refusal to pay, the insured is not required to present direct and specific evidence." *Id.* "Instead, the jury may find that the refusal to pay was vexatious based 'upon a general survey and a consideration of the whole testimony and all the facts and circumstances in connection with the case.'" *Id.* (quoting *DeWitt*, 667 S.W.2d at 710). "Generally, whether an insurer acted reasonably is a question of fact for the jury, and thus is improper for a court to determine in granting a summary judgment." *May & May Trucking, L.L.C. v. Progressive Nw. Ins. Co.*, 429 S.W.3d 511, 516 (Mo. Ct. App. 2014). "However, in cases in which the underlying facts are undisputed, that question of fact becomes a question of law for the court to properly decide." *Id.* at 516-17.

Disputed facts preclude the Court from deciding the vexatious refusal claim as a matter of law. While Acadia is entitled to insist on a determination of what caused the damage to RSI's properties, viewing the facts in light most favorable to RSI and drawing all reasonable inferences therefrom in favor of RSI (as this Court must), evidence does exist in this case from which a reasonable jury may conclude that Acadia's refusal to pay was vexatious and recalcitrant. Given the timing,

17

number and history of the inspections, when combined with reports from Acadia's own hired experts which found hail damage, a reasonable jury might well conclude that Acadia was simply unwilling to pay for the damage to RSI's roofs and continued to "expert shop" until it found one who decided there was no hail damage.  Yet even that expert also found evidence of hail damage to certain roof components and concluded that he could not rule out the possibility that a hail storm occurring during the policy period caused the damage, but Acadia still refused to pay anything on the claim.  Although Acadia intends to proffer expert testimony that its investigation was reasonable and consistent with industry custom and practice, that does not convert this disputed issue into an undisputed one where RSI has no obligation to present expert testimony to prevail on its claim.  Once again, Acadia essentially argues that it is entitled to judgment as a matter of law simply because it finds its own evidence to be more persuasive than RSI's.  As that is not the appropriate standard for summary judgment, the motion for judgment as a matter of law on RSI's claim for vexatious refusal to pay will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that the motion to exclude expert opinions and testimony [32] is denied.

**IT IS FURTHER ORDERED** that the motion for summary judgment [34] is denied in all respects except as to Count IV (compel appraisal).  In accordance

with the Memorandum and Order issued February 25, 2020, defendant shall have

summary judgment on Count IV only of plaintiff's complaint, and Count IV is

dismissed with prejudice.


RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 17th day of December, 2020.